**UNITED STATES OF AMERICA**

**-vs-**  Case No. 6:08-cr-228-Orl-28KRS

**OMAR MEDINA-SANTIAGO**
_____

## CORRECTED[1] ORDER

Defendant Omar Medina-Santiago is charged in this case with violating 21 U.S.C. § 846 by conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Defendant was previously convicted in Puerto Rico of conspiracy to violate 21 U.S.C. §§ 841(a)(1) and 860, and he now moves to dismiss the current indictment on the grounds that prosecution of this case violates his Fifth Amendment protection against double jeopardy.[2] Defendant maintains that the conspiracy charged in this case is the same conspiracy for which he was convicted in Puerto Rico. The motion has merit and must be granted.

## **FACTS**

Two indictments were filed in this Court charging forty-three defendants with conspiracy to possess with intent to distribute more than five kilograms of cocaine hydrochloride in the Middle District of Florida, the Commonwealth of Puerto Rico, and

---

[1] The prior Order (Doc. 538) has been amended solely to correct several typographical errors as well as a formatting error that occurred when the document was converted for electronic filing.

[2] The relevant filings include Defendant's Motion to Dismiss Based on Double Jeopardy (Doc. 520) and the government's Response thereto (Doc. 529). In addition, the Court heard argument at a hearing on February 8, 2012.

elsewhere from November 2005 to June 2007. The first indictment–filed in case No. 6:07-cr-00107-JA-GJK–charged thirty-one defendants. In October 2008, a second indictment containing the same charges was filed in this case against twelve conspirators, including Defendant. (Doc. 3). The charges against Defendant remain pending.

In a third case, on April 15, 2010, a grand jury in Puerto Rico indicted Defendant, along with sixty-four others, all of whom were members of an organization known as "El Combo de los Setenta" ("the Combo"), for a variety of crimes, including conspiracy to violate §§ 841(a)(1) and 860. (Doc. 529-1). The Puerto Rico indictment charged that from 1995 until April 2010, the defendants conspired to possess with intent to sell a variety of controlled substances, including cocaine. (Id. at 4-6). The objects of the conspiracy alleged in the indictment were "to distribute controlled substances at Public Housing Projects located within [the Bayamon area of] Puerto Rico, *and* to supply controlled substances, all for significant financial gain and profit." (Id. at 7 (emphasis added)). The lengthy and detailed Puerto Rico indictment also alleged that the conspirators agreed to "supply kilogram quantities of narcotics to drug traffickers throughout Puerto Rico, New York, New Jersey, Pennsylvania and Florida." (Id. at 9).

In March 2011, Defendant entered a guilty plea to the conspiracy charge contained in the Puerto Rico indictment. In his plea agreement, Defendant agreed that the objects of the conspiracy were as charged in the indictment. (Doc. 529-2). Following his plea, Defendant was sentenced to 180 months in prison. The sentence was enhanced pursuant to 21 U.S.C. § 860 because Defendant conspired to possess controlled substances within 1000 feet of a public housing project.

The nature of the Florida conspiracy was revealed through testimony, plea agreements, and various filings in the cases against the other defendants. Under the leadership of Miguel Montes, kilo amounts of cocaine were imported to the Middle District of Florida from Puerto Rico. Members of the conspiracy agreed to receive packages containing kilo amounts of cocaine shipped from Puerto Rico. In turn, these members delivered the cocaine to Montes, who would then distribute it to sellers in Florida. On two occasions, Montes traveled to Puerto Rico to purchase cocaine from Defendant. Montes also arranged to have smaller amounts of cocaine sent through the mail from Puerto Rico to the addresses of conspirators in the Middle District of Florida. Montes was charged in the first Florida indictment; he entered a plea of guilty and was sentenced to 210 months in prison.

The relationship between Montes and Defendant existed long before Montes began operating in Florida. Between 1992 and 1999, Montes worked for the Combo. Co-defendant Jose Rosario-Oquendo and Defendant were senior members of the Combo, and Defendant supervised the Combo's drug trafficking operation in Puerto Rico. Until he was arrested and convicted of drug trafficking in 1999, Montes's work for the Combo was menial. However, after he was released from prison in 2005, Montes began obtaining large amounts of cocaine from Rosario-Oquendo and Defendant for distribution in Florida.

Montes was not named as a conspirator in the Puerto Rico indictment–which was filed after he was sentenced in the Florida case–but he did testify for the government in the trial of two of the Puerto Rico conspirators. During his testimony, Montes described to a certain extent how the Combo worked. In this regard, he gave a detailed account of his dealings

with Rosario-Oquendo and Defendant.

## **DISCUSSION**

The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." U.S. Const. amend. V. Among the safeguards provided by the Fifth Amendment is protection "against a second prosecution for the same offense after conviction." North Carolina v. Pearce, 395 U.S. 711, 717 (1969). A defendant seeking protection under the Double Jeopardy Clause "must show that the two offenses charged are in law and fact the same offense." United States v. Benefield, 874 F.2d 1503, 1505 (11th Cir. 1989).

To proceed on a motion to dismiss on grounds of double jeopardy, a defendant must first make a prima facie non-frivolous claim. Id. "Once the defendant has met this initial burden, the government must prove by a preponderance of the evidence that the two indictments charge separate crimes." Id. In some instances, the government may meet its burden by reliance on textual analysis, establishing that the crimes charged are indeed different by looking to the statutory elements of the offenses in question to determine if they charge the same offense. United States v. Adams, 1 F.3d 1566, 1573 (11th Cir. 1993). In conspiracy cases, however, it is sometimes necessary for the government to rely on extrinsic evidence to satisfy its burden of proof. See United States v. Lloyd, 743 F.2d 1555, 1563 (11th Cir. 1984).

The government does not argue that Defendant's motion is insufficient to establish a prima facie claim but–relying on both its textual analysis under Blockburger v. United

States, 284 U.S. 299 (1932), and extrinsic evidence–contends that it has met its burden of establishing that the Florida and Puerto Rico indictments charge separate crimes. I disagree.

*I.* Blockburger *analysis*

Analysis under Blockburger requires examination as to whether there is a double jeopardy bar to a second prosecution for the same offense. The "test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of fact which the other does not." Id. at 304. A single act may violate more than one statute, but if each statute requires proof of a fact that the other does not, neither a conviction nor an acquittal of one charge will result in a double jeopardy bar to the other. Id. It is the position of the government that application of the "same elements" analysis is sufficient to establish that the pending prosecution is not barred by Defendant's Puerto Rico conviction because the statutes that were allegedly violated in each case contain elements not contained in the other. The government reasons that while both indictments charge conspiracies to violate § 841(a)(1), the Puerto Rico indictment also charged conspiracy to violate § 860 by distributing narcotics within 1000 feet of a public housing facility, and the government argues that this additional element establishes that the Florida and Puerto Rico conspiracies were not the same. This argument does not survive scrutiny.

"'As is invariably true of a greater and lesser included offense, the lesser offense . . . requires no proof beyond that which is required for conviction of the greater. . . . The greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it.'" United States v. Harvey, 78 F.3d 501, 504 (11th Cir. 1996)

(quoting Brown v. Ohio, 432 U.S. 161, 168 (1977)). When an indictment charging conspiracy to violate § 841(a)(1) also charges conspiracy to violate § 860 as a result of the same conduct, the § 841(a)(1) charge is a lesser included offense of the § 860 charge because no additional proof is necessary for the § 841(a)(1) charge. United States v. Freye-Lazaro, 3 F.3d 1496, 1507 (11th Cir. 1993). The § 860 charge simply provides for an enhanced penalty when the § 841(a)(1) offense is committed within 1000 feet of a public housing project. A conviction under § 860 would, therefore, bar prosecution for the same conduct under a simple conspiracy to violate § 841(a)(1) charge. See Harvey, 78 F.3d at 504; Freyre-Lazaro, 3 F.3d at 1507 ("Under [the Blockburger] test, 21 U.S.C. § 841(a) and 21 U.S.C. § 860 constitute the same offense for double jeopardy purposes."). Accordingly, to determine whether Defendant's Puerto Rico conviction bars prosecution in this case, it must be determined if the charges in the Puerto Rico case were based on the same conduct as the charge in this case; in other words, whether the cases involve a single conspiracy or two distinct ones.

*II. Comparison of the Conspiracies*

The government has charged Defendant with two violations of the same statute but contends that these charges do not constitute double jeopardy because the charges are based on two distinct conspiratorial schemes–one in Puerto Rico and one in Florida. "At its core, the determination as to whether the government can prosecute a defendant for more than one conspiracy turns on whether there exists more than one unlawful agreement." Benefield, 874 F.2d at 1505. In determining whether there was more than one unlawful agreement, the Eleventh Circuit has directed that, in addition to the statutory offenses

charged in the indictments, the following factors be considered:

> (1) time, (2) persons acting as co-conspirators, . . . [(3)] the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and [(4)] places where the events alleged as part of the conspiracy took place.

Harvey, 78 F.3d at 505 (adopting the factors set forth in United States v. Marable, 578 F.2d 151, 154 (5th Cir. 1978)). Examination of the record with the above factors in mind leads me to conclude that the government has not met its burden of proving that Defendant had more than a single agreement to supply controlled substances to Florida in furtherance of the object of the Puerto Rico conspiracy for which Defendant has already been convicted.

*A. Time of conspiracy*

Consideration of the time of the conspiracies weighs in favor of concluding that Defendant was a member of one, single conspiracy. Obviously, if the alleged conspiracies were in operation at different times–one ceased to exist before the other began–they would not be considered a single conspiracy. On the other hand, if the time frame of their existence overlapped, it could–but would not necessarily–mean that they were the same. United States v. Nyhuis, 8 F.3d 731, 736 (11th Cir. 1993). In this case, the Puerto Rico indictment charges that the conspiracy began in approximately 1995, (Doc. 529-1 at 7), and continued for fifteen years until April 2010, when the indictment was returned. The Florida conspiracy began in November 2005 and continued until June 2009. (Doc. 3 at 1). The time periods that the conspiracies are alleged to have existed not only overlap, but also the time frame of the Florida conspiracy falls entirely within the time frame of the Puerto Rico conspiracy.

### B. Places where events took place

The events giving rise to Defendant's involvement in the alleged conspiracies occurred in the same places. The Puerto Rico indictment devotes twenty-eight paragraphs to the manner and means employed by members of the Combo in carrying out the drug trade operation. (Doc. 529-1 at 8-14). It provides a detailed account of how the organization controlled illegal drug trade in the Bayamon area of Puerto Rico. One paragraph, however, broadens the geographical scope of the operation, stating that "[i]t was further a manner and means of the conspiracy that the defendants and their co-conspirators would also supply kilogram quantities of narcotics to drug traffickers throughout Puerto Rico, New York, New Jersey, Pennsylvania and Florida." (Id. at 9). The Florida indictment contains an entirely consistent description of the scope of the conspiracy, stating that "in the Middle District of Florida, the Commonwealth of Puerto Rico, and elsewhere" defendants conspired to violate § 841(a)(1). (Doc. 3 at 1). Furthermore, all discussions and interaction between Montes, Rosario-Oquendo, and Defendant regarding their cocaine trafficking occurred in Puerto Rico and Orlando.

### C. Persons acting as conspirators

The identity of the conspirators is another factor to be considered in determining whether Defendant has been charged with a separate conspiracy in Florida. The weight given this consideration would be greater if the identities of the conspirators were either exactly the same–which would militate in favor of a finding that the conspiracies were the same–or were completely different–which would tilt the balance in favor of finding that there were discrete conspiracies. The conspirators identified in the Florida and Puerto Rico indictments are,

-8-

however, neither identical nor totally different; they overlap to a certain extent. Of the 108 defendants named in both the Florida and Puerto Rico indictments–forty-three in the Florida cases and sixty-five in the Puerto Rico case–only two, Defendant and Rosario-Oquendo, were named in both. It also appears from Montes's testimony that he may have been an unnamed conspirator in the Puerto Rico case. Thus, there were at least two and possibly three conspirators in common.

The minimal degree to which the identity of membership overlaps is balanced against the significant roles of Montes, Rosario-Oquendo, and Defendant. The Puerto Rico indictment went to great lengths to explain the roles of all sixty-five participants, dividing them into nine categories: leaders, suppliers, administrators, drug point owners, enforcers, runners, sellers, facilitators, and lookouts. (Doc. 529-1 at 14-18). Defendant was one of only three leaders of the Combo. (Id. at 14). The indictment named three suppliers, two administrators, and eleven drug point owners, including Rosario-Oquendo. (Id. at 14-15). The drug point owners had the right to sell drugs at specific locations within Puerto Rico. (Id.). The other forty-six named conspirators were mere minions carrying out orders from their superiors.

It is not necessary that all members of a conspiracy know all details pertaining to its operation. It is unlikely that many of Montes's subordinates who agreed to receive packages from Puerto Rico knew of Montes's arrangement with members of the Combo. Montes was the leader of the Florida operation, and he had agreed to purchase large amounts of cocaine from Rosario-Oquendo and Defendant, who had significant roles in the Combo. Montes had worked for the Combo in his neighborhood in Bayamon, Puerto Rico, and knew the organization's leaders prior to engaging in the importation and distribution of cocaine in Florida.

*D. Overt acts and other descriptions of conduct the government seeks to punish*

The record evidence[3] regarding the conduct at issue also points to the conclusion that the government seeks to punish the same conduct of Defendant in both cases–supplying cocaine for distribution in Florida. The Puerto Rico conspiracy involved a wider array of narcotics. The members of the conspiracy were able to deliver a variety of narcotics to their customers–including heroin, oxycodone, marijuana, and alprazolam–in addition to cocaine base and cocaine. (529-1 at 9). In contrast, the Florida conspiracy involved only the importation and distribution of cocaine. (Doc. 3 at 2). Thus, those defendants charged in the Florida case were limiting their dealings to only one of the many products available from the Combo. Montes acquired most of the cocaine he redistributed in Florida from members of the Combo. Although the only product shipped to Florida was cocaine, cocaine was specifically mentioned as one of the controlled substances that members of the Combo agreed to distribute.

Montes testified in the Puerto Rico trial that he purchased some cocaine from men known only as "Pica," (Doc. 529-3 at 47), and "Wesley" (id. at 28). "Pica" is the nickname of Rafael Santiago Martinez, one of the Combo members, but the name "Wesley" does not otherwise appear in documents submitted as relevant to this issue. Montes also testified in the Puerto Rico case that between 2006 and the time of his arrest in 2008 he purchased over 400 kilos

---

[3]The parties have provided the Court with documents relevant to this inquiry. Those documents included the Puerto Rico indictment (Doc. 529-1); the two Florida indictments (Doc. 3 & Doc. 200 in case No. 6:07-cr-107-Orl-28GJK); Defendant's Plea Agreement in the Puerto Rico case, including the Statement of Facts (Doc. 529-2); a transcript of Defendant's change of plea hearing (Def.'s Hr'g Ex. 1); Defendant's Presentence Report (Def.'s Hr'g Ex. 2); the Judgment entered against Defendant in Puerto Rico (Def.'s Hr'g Ex. 3); and a transcript of Montes's testimony at the trial of two of the conspirators charged in the Puerto Rico indictment (Doc. 529-3).

from the people in Barbosa, the public housing project in Bayamon from which the Combo did business. (Id. at 51). This is more cocaine than the entire amount for which he was held accountable at sentencing in the Florida case.

The government also points out that the method of distribution of narcotics in Florida was different from that in Puerto Rico. Montes was in charge of importation and distribution of cocaine in Florida. Montes paid his subordinates to receive packages containing cocaine from Puerto Rico. These recipients were then encouraged to get others to volunteer to receive packages. Montes would sometimes pay his Puerto Rico suppliers by hiding cash in packages sent through the mail. Other times he would pay in person. Montes described going to Puerto Rico on at least two occasions to meet with Rosario-Oquendo and Defendant to arrange for kilo quantity shipments. On one such occasion, he brought $100,000 to pay for the purchase of cocaine. (Id. at 42). On another occasion, he purchased two kilos from Rosario-Oquendo and told him to give it to the drug point in Bayamon. (Id.). The fact that Montes used these methods to obtain the cocaine from Puerto Rico and distribute it in Florida is not inconsistent with Defendant's agreement to supply narcotics to Montes in Florida for profit as charged in the Puerto Rico indictment.

Other documentation supports the conclusion that Defendant was involved in a single conspiracy. For instance, the Statement of Facts attached to Defendant's Plea Agreement–tracking the language from the indictment–states that the object of the Puerto Rico conspiracy was to "distribute controlled substances at Public Housing Projects located within Puerto Rico, and to supply controlled substances all for significant financial gain and profit." (Doc. 259-2 at 10). At the change of plea hearing, the judge asked whether "the object of [this]

-11-

conspiracy was to distribute controlled substances for a significant financial gain and profit," and Defendant answered in the affirmative. (Def.'s Hr'g Ex. 1 at 14, 15). At that hearing, the judge also asked Defendant about the manner and means of the conspiracy, including the distribution of narcotics in Bayamon public housing projects. (Id. at 14-15). As a part of that colloquy, Defendant admitted that "members of the conspiracy would also supply kilogram quantities of narcotics to drug traffickers throughout Puerto Rico and parts of the United States." (Id. at 14, 15).

The Presentence Investigation Report ("PSR") (Def.'s Hr'g Ex. 2) submitted to the sentencing judge further illustrates that Defendant's agreement to supply Montes with cocaine for distribution in Florida was in furtherance of the Puerto Rico conspiracy. The report summed up the conduct of members of the Puerto Rico conspiracy, stating: "Moreover, the defendants and their co-conspirators would also supply kilogram quantities of narcotics to drug traffickers throughout Puerto Rico, New York, New Jersey, Pennsylvania, and Florida." (Id. at 11). For that matter, all of the records of the Puerto Rico proceedings against Defendant establish that supplying kilogram quantities of narcotics to Florida was an object of the Puerto Rico conspiracy.

*III. Argument During the Puerto Rico Trial*

As earlier noted, two of Defendant's co-defendants in the Puerto Rico case proceeded to trial, and during the trial, Montes appeared as a government witness. It is clear from the transcript of the Puerto Rico trial that the prosecutor in that case believed–and in fact argued

-12-

to the court–that Montes's operation in Florida was part of the larger Puerto Rico conspiracy.[4] As the prosecutor began questioning Montes about his acquisition of kilos of cocaine from members of the Combo in Bayamon, defense counsel objected on grounds that Montes's operation in Florida was a separate conspiracy, (id. at 38)–the same argument the government now makes in this case.

Following the objection, the prosecutor asked to approach the bench, where a sidebar conference took place. The conference began with the judge questioning the prosecutor as to how Montes's conduct "tie[d] in with [the Puerto Rico] indictment." (Id. at 38). The prosecutor responded by explaining that Montes was "getting and receiving, through 'Checko' [Rosario-Oquendo] and Omar [Defendant] who are also listed in the indictment as defendants." (Id.). The prosecutor further explained that Montes "was receiving the kilos that [Rosario-Oquendo and Defendant] were sending from Puerto Rico through the mail system." (Id. at 39). Defense counsel acknowledged that the three men were engaged in the drug business but again insisted that Montes's Florida operation was a separate conspiracy. (Id.). After hearing from counsel, the judge overruled defense counsel's objection, accepting the prosecutor's argument that the conduct was all part of the same conspiracy.[5] (Id. at 40). In other words, based on the judge's knowledge of the case against the members of the Combo, the judge

---

[4]True to his duty as an officer of the court and a representative of the United States, the Assistant United States Attorney in this case brought this transcript to the attention of the Court knowing full well that it did not advance his argument on the issue at hand.

[5] "The objection is denied. They are getting drugs from Barbosa and it is alleged in the indictment that they were selling drugs in the States. Objection denied." (Doc. 529-3 at 40).

-13-

determined that Defendant's agreement to supply Montes with cocaine was a part of the Puerto Rico conspiracy.

The assertions of the prosecutor and the court's acceptance of the prosecutor's argument are additional factors weighing in favor of the conclusion that Defendant was engaged in a single conspiracy which was charged in Puerto Rico and to which he has entered a plea of guilty. That plea was accepted by the Puerto Rico district court, which adjudicated Defendant guilty and sentenced him to fifteen years in prison.

## **CONCLUSION**

The Double Jeopardy Clause does not foreclose prosecution of separate conspiracies that emanate from the same leadership or overlap in time. United States v. Nyhuis, 8 F.3d 731, 735 (11th Cir. 1993). What the clause does foreclose, however, is a second prosecution for the same illicit agreement and conduct. Defendant has presented a non-frivolous prima facie claim of double jeopardy, and the government has failed to establish by a preponderance of the evidence that it has not charged Defendant in this case with having entered into the same conspiracy for which he was convicted in Puerto Rico.

Accordingly, it is **ORDERED** that the Motion to Dismiss Based on Double Jeopardy (Doc. 520) is **GRANTED** and the Indictment against Defendant Omar Medina-Santiago in this case is **DISMISSED**.

**DONE** and **ORDERED** in Orlando, Florida on this 2nd day of March, 2012.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
OMAR MEDINA-SANTIAGO